BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT RAIL CONFERENCE, Petitioner

v.

SURFACE TRANSPORTATION BOARD and United States of America, Respondents,

Buckingham Branch Railroad Company and CSX Transportation, Inc., Intervenors.

No. 04–1441.

United States Court of Appeals, District of Columbia Circuit.

June 30, 2006.

Robert Hewitt Pate, III, John P. Fonte, Robert B. Nicholson, Attorneys, U.S. Department of Justice, Washington, DC, for Respondents.

Keith G. O'Brien, Rea, Cross & Auchincloss, Ronald Maurice Johnson, Akin, Gump, Strauss, Hauer & Feld, Louis E. Gitomer, Ball & Janik, Washington, DC, Peter Joseph Shudtz, CSX Transportation, Inc., Jacksonville, FL, for Intervenors.

Before: ROGERS, TATEL and GRIFFITH, Circuit Judges.

*JUDGMENT*

PER CURIAM.

This petition for review of an order of the Surface Transportation Board was considered on the briefs and arguments of the parties. It is

**ORDERED AND ADJUDGED** that the petition for review is denied. The Brotherhood of Maintenance of Way Employes Division/IBT Rail Conference (the "Union") contends that the Surface Transportation Board arbitrarily and capriciously approved and authorized, *see* 49 U.S.C. § 11323(a)(2), a lease by Buckingham Branch Railroad Company ("BBRR") of a 200–mile rail line, and a sub-lease of a 9–mile rail line (the "Lines"), from CSX Transportation, Inc. ("CSXT"). The Union argued to the Board that the lease was a "sham" and "a device to use [Board] approval for other purposes," but the Board rejected those challenges. The Union filed this timely petition for review, invoking our jurisdiction to review the Board's final order pursuant to 28 U.S.C. §§ 2321(a) and 2342(5).

■ The Union represents thirteen CSXT employees who maintained the Lines. If the employees' challenge is successful and we set aside the Board's approval of the lease, the Union's members—and not employees of BBRR—would have the right to perform maintenance on the Lines. The Union's members thus have standing to bring this challenge. *See Rainbow/PUSH Coalition v. FCC*, 330 F.3d 539, 542 (D.C.Cir.2003) (discussing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Union has associational standing to bring this case on behalf of these aggrieved employees. *See Rainbow/PUSH Coalition*, 330 F.3d at 542 (discussing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

Before the Board, the Union relied upon a series of cases rejecting efforts to seek Board approval for transactions not undertaken for *bona fide* purposes under § 11323(a) and related statutes. *See, e.g., Marin County v. United States*, 356 U.S. 412, 418, 78 S.Ct. 880, 2 L.Ed.2d 879 (1958) (concluding that a predecessor to the Board had no jurisdiction, under a provision of the Interstate Commerce Act, over a transaction purportedly between "carriers" where one entity was "a mere corporate shell without property or function" that could "by no stretch of the imagination be deemed a 'carrier' " and "the alleged 'acquisition' amount[ed] to little more than a paper transaction"). The Union argued that several aspects of the lease demonstrate that CSXT was "not truly relinquishing" the Lines. Specifically, the Union noted that (1) under the lease, CSXT and BBRR may terminate their agreement after ten years if financial terms cannot be agreed upon for a second ten-year term; (2) the proposed lease would still allow the lessor, CSXT, to move 156,000 empty train cars per year and 7,900 cars per year in servicing one local shipper; (3) BBRR, as lessee, would only handle about 11,700 cars on the Lines—a much smaller number; and (4) CSXT would continue to receive revenue from Amtrak operations. Because BBRR would "not have close to a majority of the operations" on the Lines, "these facts show," in the Union's view, that the "transaction is effectively a grant of local trackage rights for BB[RR] to serve some, but not all local shippers." CSXT impermissibly sought "to avoid maintenance of way costs and the capital investment that would be necessary [to maintain the Lines] if CSXT continued as the owner, operator and common carrier."

The Board rejected the Union's concerns, concluding that the Union failed to demonstrate "reason to doubt the sincerity of the applicants' intent to enter into a long-term arrangement." *Buckingham Branch R.R. Co., Lease, CSX Transp., Inc.*, STB Finance Docket No. 34495, slip. op. at 8, 2004 WL 2619746 (2004) (*"BBRR/CSXT Lease"*). Nor had the Union showed that CSXT and BBRR were

"misusing the Board's processes here to achieve a result other than that for which they seek approval." *Id.* Although CSXT would still have significant traffic traversing the Lines, the Board was aware of "no requirement that the railroad that handles the majority of traffic on a line be the party that bears responsibility for maintenance of the line." *Id.* at 7. The Board noted that BBRR has provided local rail service on an existing 17–mile railroad since 1989, *id.* at 1, and "plans to compete vigorously with trucks" for shipping traffic by "providing more frequent rail service" than CSXT and by employing "local sales, marketing, and operating personnel," *id.* at 5 CSXT did not have "an incentive to allow maintenance to deteriorate to such a degree that, sooner or later, operations would have to be suspended" because, as the Union acknowledged, CSXT plans to continue using the bulk of the Lines for significant traffic. *Id.* at 7–8.

■ "We review final decisions of the [Surface Transportation Board] under the deferential arbitrary and capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)." *McCarty Farms, Inc. v. Surface Transp. Bd.*, 158 F.3d 1294, 1300 (D.C.Cir.1998). We cannot say that the Board's determination was arbitrary and capricious. Given the substantial evidence in the record that BBRR is a *bona fide* local business with experience in providing local rail shipping service and that BBRR has developed a business plan for improving service on the Lines, which the record shows is supported by numerous local shippers, we see no basis for overturning the Board's decision. The lease at issue was not a "paper transaction," *see Marin County,* 356 U.S. at 418, 78 S.Ct. 880 and the Board was well within its discretion in concluding that it had jurisdiction to approve and authorize this transaction as a lease, *see* 49 U.S.C. § 11323(a)(2).

■ The Union additionally argues that one statement in the Board's opinion demonstrates that the Board "refused to determine whether the transaction was actually a lease," as CSXT and BBRR contended, or was a "trackage rights" agreement, as the Union contended. The Board simply noted, however, that even assuming *arguendo* the Union was correct and the transaction could be "more properly characterized as a trackage rights arrangement[,] ... both the need for Board approval and the applicable standard for approval would be the same as for a lease." *BBRR/CSXT Lease,* slip op. at 7. We see no error in that statement. As the Board concluded, under these facts, both a trackage rights agreement, *see* 49 U.S.C. § 11323(a)(6), and a lease, *see id.* § 11323(a)(2), would be subject to the same standard for Board approval set forth in 49 U.S.C. § 11324(d).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. R. 41.